# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01263-COA

**CHARLES NETTLES SR.**                                                        **APPELLANT**

**v.**

**SHASTA DELANE NETTLES**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2024 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH BILBO MOFFETT |
| ATTORNEY FOR APPELLEE: | SHASTA DELANE NETTLES (PRO SE) |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 05/05/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     The Wilkinson County Chancery Court denied Charles Nettles Sr.'s petition to set aside a deed.  In the chancery court, Charles alleged that his daughter, the grantee, had forged his signature on the deed, and the chancellor found that Charles failed to meet his burden of proof.  On appeal, Charles raises new claims that he never raised before the chancellor, including that the chancellor erred by failing to join necessary parties.  The record does not show that any necessary party was absent, and Charles's arguments are otherwise procedurally barred and without merit.  Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2024, Charles Nettles Sr. filed a petition in the Wilkinson County Chancery Court

to set aside a quitclaim deed. The deed conveyed 29.5 acres in Wilkinson County from Charles to his daughter, Shasta Nettles. The deed was purportedly signed by Charles and notarized on February 7, 2019, and was recorded in the Wilkinson County land records on October 20, 2022. The deed included a tax parcel number and handwritten indexing instructions designating the section, township, and range and stated in part:

> BETWEEN Charles B. Nettles, married, . . . (the "Grantor"), for and in consideration of the sum of $1.00, and other good and valuable consideration, the receipt of which is hereby acknowledged, and Shasta DeLane Nettles . . . (the "Grantee").
>
> The Grantor does hereby remise and release, as well as quitclaim, unto the Grantee as the sole tenant, and the Grantee's heirs and assigns all of the following lands and property, together with all improvements located thereon in the County of Wilkinson, State of Mississippi:
>
> 31.278701°N.-91.319807°E Coordinates
> Land cover
> Deciduous Forest: 38.93ac (79.2%), Shrub/Scrub: 4.00ac (8.1%), Mixed Forest: 3.48ac (7.1%), Woody Wetlands: 2.78ac (5.7%)
> Total of 29.5 acres.
>
> . . . .
>
> The property conveyed in this deed is part of the homestead of the Grantor.

¶3. Charles's petition to set aside the deed named Shasta as the defendant. Charles alleged that he owned the subject property, and he "vehemently denie[d]" signing the subject deed. Charles also alleged that Shasta had "a history of forging [Charles's] signature to documents." Charles requested that the court set aside the deed as a forgery.

¶4. Shasta filed a pro se answer to the petition. Shasta stated that "all three" parties—Shasta, Charles, and Charles's ex-wife, Sonia Nettles—signed the deed in a notary's

presence. Shasta alleged that Charles had a history of falsely accusing her of fraud and other crimes. She asked the court to deny Charles's petition because the deed was properly signed, notarized, and recorded and because Charles waited too long to challenge the deed.

¶5. The chancery court held a hearing on the petition. Charles called Shasta as his first witness. Shasta testified that prior to 2019, she moved into Charles's house at 1456 Cold Springs Road in Woodville because Charles "was upset that his wife had left him" and "needed somebody to help him with his business." But when Charles's new "girlfriend" moved into the house, Shasta was uncomfortable living with the two of them, so she moved into a "camper trailer" on Charles's property at 1376 Cold Springs Road (the subject property). Shasta later decided to build a house of her own on that property, but "the only way [she] was going to do that . . . was [to] get a quitclaim deed" from Charles. Shasta explained that Charles had always been "wishy-washy" and would turn on someone "[o]nce he decide[d] he [didn't] have a need for you." She testified that she prepared the subject deed and paid Charles ten dollars as consideration. Shasta testified that on February 7, 2019, she, Charles, and Charles's "estranged wife" or "ex-wife" Sonia went to Tracy White's house. Shasta knew White, a notary public, because White "used to work at" a bank where Shasta had a loan. Shasta testified that she, Charles, and Sonia all signed the deed in White's presence, and White notarized their signatures on the deed. Shasta stated that she did not record the deed immediately because she and Charles "had an agreement."

¶6. In 2021, Charles had Shasta evicted from the camper trailer on the subject property. Shasta was still living in the trailer at the time because her new house was not finished.

Shasta testified that Charles had her evicted because he wanted to sell the trailer. Shasta moved into her unfinished house at that point. She testified that she lived in her house "after that with no problem, with [Charles] aware of it, knowing it." She stated that "everything was fine" until someone offered to buy the property, and Charles "accepted . . . money" for it, and "then all of a sudden," he "needed [her] to go." Even so, Shasta testified that Charles "knew that he had [given her] the quitclaim deed."

¶7.     Charles testified that he did not sign the subject deed, had never met White, and had never been to White's house. He testified that he discovered the deed in 2023 when his nephew told him that Shasta was listed as the record owner of the property on the tax assessor's map. Charles denied that the signature on the deed was his. While testifying in court, Charles signed a piece of paper, which was admitted into evidence, and stated, "That's the way I sign it most of the time." Charles alleged that Shasta had forged his signature previously, which Shasta denied.

¶8.     Charles called his sister, Bonnie Lazarus, as his final witness. Lazarus asserted that Charles was "mortgaged through United Mississippi Bank," but no deed of trust or other documentation of a mortgage was offered. Lazarus offered little other relevant testimony. Charles then rested his case-in-chief.

¶9.     Shasta called Tracy White as a witness. White testified that she was a notary public, and she verified that her stamp and signature appeared on the subject deed. The chancellor noted that he had not seen the deed because Charles failed to attach it to his petition or offer it during his case-in-chief. The chancellor observed, "They don't even want me to see the

4

deed for some reason . . . .  I can't even see the deed that I am being asked to set aside."

Shasta apologized, but the chancellor said there was no reason for her to apologize because she "didn't bring this case."[1]  A copy of the deed was then admitted into evidence.

¶10.    The copy of the deed admitted into evidence and included in the record on appeal is missing a page.  The filing stamp on the deed indicates it is recorded in the Wilkinson County land records in Book 16-J at pages 627-631.  However, the copy of the deed in our record includes two copies of page 630, which bears Charles's signature, but no page 629.  The copy of the deed in our record also does not include Sonia's signature, which may be on the missing page 629.

¶11.    White testified that she kept a notary log but lost it in a house fire in March 2022.  She testified that "it was not uncommon, by no means," for people to come to her house to have documents notarized, and she did not "remember [Charles], per se."  White testified that she knew Shasta as a customer at the bank, and Charles "look[ed] vaguely familiar."  Neither party questioned White about Sonia's presence or signature.

¶12.    The chancery court denied Charles's request to set aside the deed, finding he failed to prove by clear and convincing evidence that his notarized signature was forged and failed to rebut the "notarial presumption."  *See Matthews v. Whitney Bank*, 282 So. 3d 786, 792-93 (¶22) (Miss. Ct. App. 2019).  Charles filed a notice of appeal.

## ANALYSIS

---

[1] The chancellor noted that Rule 10(d) of the Mississippi Rules of Civil Procedure provided that "[w]hen any claim . . . is founded on . . . [a] written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading."  Rule 10(d) was later deleted effective December 26, 2024.

¶13. On appeal, Charles argues (1) that the chancellor erred by "failing to join necessary and indispensable parties" under Rule 19(a) of the Mississippi Rules of Civil Procedure and (2) that "[t]he [c]hancellor's factual findings [were] manifestly wrong or clearly erroneous or . . . the [c]hancellor abuse[d] his discretion."

## I. Rule 19

¶14. Charles argues the chancellor erred by failing to join two allegedly necessary and indispensable parties—(1) "United Mississippi Bank," which allegedly held a mortgage on the subject property, and (2) Charles's "wife," Sonia, who allegedly had a homestead right to the property.

¶15. Charles failed to raise this issue in the trial court—he never sought to join any other parties. "It is a long-established rule . . . that a question not raised in the trial court will not be considered on appeal," *Adams v. Bd. of Sup'rs of Union Cnty.*, 177 Miss. 403, 414, 170 So. 684, 685 (1936), and "[a] trial judge cannot be put in error on a matter which was never presented to him for decision." *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988). However, "[the Mississippi Supreme Court] has held that failure to join necessary parties may be raised [for the first time] on appeal and even by the appellate court sua sponte." *Bd. of Educ. of Calhoun Cnty. v. Warner*, 853 So. 2d 1159, 1170 (¶38) (Miss. 2003); *accord Shaw v. Shaw*, 603 So. 2d 287, 293-94 (Miss. 1992). Therefore, we will address the issue despite Charles's failure to raise it in the trial court.

¶16. We note that this limited "exception" to the rule that issues not raised in the trial court are waived exists "to protect the interests of *absent persons*," not the parties, "since any

6

prejudice to the [parties] has been brought upon [them] by [their] own failure to object in the trial court." *Shaw*, 603 So. 2d at 294 (emphasis added). Therefore, reversal generally requires a showing that the rights of an *absent* party have been prejudiced. *Id.*

¶17.    Rule 19(a) provides:

> A person who is subject to the jurisdiction of the court shall be joined as a party in the action if:
>
> (1) in his absence complete relief cannot be accorded among those already parties, or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
>
> If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant or, in a proper case, an involuntary plaintiff.

M.R.C.P. 19(a)(1)-(2). "A necessary party is a person who has such a substantial interest in the suit that no complete, practical, and final judgment can be made without directly affecting his interest or else leaving the controversy in such condition that its final determination may be wholly inconsistent with equity and good conscience. Any person in whose behalf a substantial interest is or may be claimed is more than a nominal party." *Mahaffey v. Alexander*, 800 So. 2d 1284, 1285 (¶5) (Miss. Ct. App. 2001) (quoting George D. Warner Jr., *Warner's Griffith Mississippi Chancery Practice* § 108 (1991)).

### A.    United Mississippi Bank

¶18.    Although Charles asserts on appeal that "the real property at issue is encumbered by

7

a mortgage in favor of United Mississippi Bank," the record does not establish that fact. Charles's sister, Lazarus, asserted that "[h]e [(i.e., Charles)] is mortgaged through United Mississippi Bank." However, she provided no further explanation and did not specify what property the "mortgage" encumbered. In contrast, Shasta testified that "[t]here was" a mortgage on the subject property at one time, but it had been "paid . . . off." Charles himself did not mention a mortgage or deed of trust in his testimony or pleadings, and no documentation of a mortgage was ever offered or admitted into evidence. As the chancellor noted in the final judgment, there was some "testimony" about a "mortgage," but no documentation of it was offered. Thus, despite Charles's assertions on appeal, *the record does not show that the subject property is subject to a deed of trust or mortgage or that any absent party's interest was prejudiced by the trial court's judgment*. As this Court has stated, "unsupported assertions in [an] appellate brief are not evidence and will not be used as grounds for reversing the trial court's judgment." *Atkins v. Moore*, 352 So. 3d 217, 229 (¶46) (Miss. Ct. App. 2022) (quotation marks and other brackets omitted). Accordingly, this issue is without merit.

### B. Sonia

¶19. Charles argues that his "wife" Sonia was a necessary party because the quitclaim deed recited that the subject property was "part of [Charles's] homestead." Charles relies on Mississippi Code Annotated section 89-1-29 (Rev. 2021), which provides in relevant part: "A conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the

8

owner is married and living with the spouse or by an attorney in fact for the spouse."

¶20. This argument also lacks support in the record. Shasta consistently referred to Sonia as Charles's "estranged wife" or "ex-wife." Shasta testified that Sonia had *already* "left him and had taken him for a lot of money" before she (Shasta) moved home to help with Charles's business. Indeed, Shasta testified that Charles's *new "girlfriend"* had already moved in with him before the subject deed was executed. Charles himself never mentioned Sonia in his testimony or his pleadings. Nor did any other witness mention Sonia. Therefore, the only record evidence shows that the homestead statute does *not* apply to Sonia because Charles was *not* "living with" her at the time of the conveyance. Miss. Code Ann. § 89-1-29. Accordingly, Charles's argument that Sonia was a necessary party is also without merit.

## II. The Chancellor's Findings

¶21. Charles also argues that "the [c]hancellor's factual findings [are] manifestly wrong or clearly erroneous or . . . the [c]hancellor abuse[d] his discretion" because (1) there is no evidence to support the chancellor's finding that Sonia signed the quitclaim deed, (2) the deed is void on its face because it is homestead property and was not signed by the grantor's spouse, and (3) the deed is void on its face for lack of a proper legal description.

¶22. These issues are all waived because Charles did not raise them in his petition to set aside the deed or at any point during the proceedings in the trial court. *Adams*, 177 Miss. at 414, 170 So. at 685. In the trial court, Charles challenged the deed only on the ground that his signature was forged. He never alleged that Sonia did not sign the deed or that her

9

signature was forged, that the deed was void under the homestead statute,[2] or that the deed was invalid for any other reason. Because "[a] trial judge cannot be put in error on a matter which was never presented to him for decision," *Methodist Hosps. of Memphis*, 518 So. 2d at 1228, these issues are all procedurally barred on appeal.

¶23. On appeal, Charles has seemingly abandoned his original challenge to the deed on the ground that his signature was forged, as he makes no argument that the chancellor clearly or manifestly erred on this issue. In the final judgment, the chancery court properly stated:

> When a party challenges the validity of a properly-acknowledged deed, that party must overcome several presumptions favoring the legitimacy of the document. The first presumption provides that, where a deed is properly acknowledged, the instrument is presumed to be authentic because the certificate of acknowledgment infers verity and presumptively states the truth. As our Supreme Court has stated, it is presumed that the notary making a certificate of acknowledgment has certified to the truth and has not been guilty of a wrongful or criminal action. *The presumption has been stated to be one of the strongest in the law*. This presumption can be overcome only by clear and convincing evidence.

*Matthews*, 282 So. 3d at 792-93 (¶22) (citations, brackets, and quotation marks omitted).

Thus,

> [t]o overcome the notarial presumption, it was [Charles's] burden to prove forgery by clear and convincing evidence. Clear and convincing evidence is such a high evidentiary standard that it surpasses even the standard of overwhelming weight of the evidence. As an appellate court, we must bear in mind this high standard in determining whether there is sufficient evidence to

---

[2] As we explained above, based on the evidence in the record, Sonia was not required to sign the deed under the homestead statute. We further note that Shasta testified Sonia *did* sign the deed, and Charles never alleged—in his testimony or otherwise—that Sonia did not sign the deed or that her signature was forged. As noted above, the copy of the deed in the record does not include Sonia's signature; however, it is also evident that the copy of the deed in the record is missing a page. The chancellor specifically noted that Charles's "wife . . . also signed the deed but no one is alleging that her signature is forged."

support the chancellor's findings. Where the appealing party has such a burden at trial, he necessarily has a higher hill to climb on appeal.

*Id.* at 794 (¶29) (citations, quotation marks, and ellipsis omitted). Moreover, on appeal,

[t]his Court employs a limited standard of review in reviewing the decisions of a chancellor. We do not here consider the evidence de novo but rather apply the familiar substantial evidence/manifest error test. The findings of a chancellor will not be disturbed unless this Court finds the chancellor abused his discretion, was manifestly wrong or made a finding which was clearly erroneous. We also defer to the chancellor as to the weight and credibility of the witnesses and the weight of the evidence.

*Id.* at 792 (¶21) (citations, quotation marks, other brackets, and ellipsis omitted).

¶24. The chancellor found that Charles failed to meet his burden of proving by clear and convincing evidence that his signature was forged. The chancellor reasoned that Charles's mere denial that he signed the deed was not clear and convincing evidence given that it was contradicted by the testimony of Shasta and White. Indeed, "[a]lthough [Charles] denied signing the [deed], the Mississippi Supreme Court 'has long been committed to the doctrine that the testimony of parties in interest is not sufficient to overturn [the notarial presumption].'" *Id.* at 795 (¶30) (quoting *Bowers v. Fields*, 148 So. 358, 358 (Miss. 1933)). In light of Charles's high burden of proof, the notarial presumption, and our limited standard of review, we certainly cannot say that the chancellor clearly or manifestly erred.

## CONCLUSION

¶25. The record does not establish that any necessary party was absent, and substantial evidence supports the chancellor's findings. Therefore, the judgment of the chancery court is **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE,**

11

**McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**